IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT F. BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV655 |
| | ) | |
| v. | ) | |
| | ) | |
| IMMANUEL MEDICAL CENTER, CITY | ) | MEMORANDUM AND ORDER ON |
| OF OMAHA POLICE DEPARTMENT, T. | ) | DEFENDANT IMMANUEL MEDICAL |
| D. GENSLER, M.D., and | ) | CENTER'S MOTION TO DISMISS |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| at the Douglas County Jail, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On March 1, 2007, the plaintiff, Robert F. Baker, filed a second amended complaint naming "Immanual Medical Center, City of Omaha Police Department, T.D. Gensler, M.D. & Correctional Medical Services at the Douglas County Jail" as defendants. (See Second Am. Compl., filing 20.) Now before me is a motion to dismiss the complaint filed by "Alegent Health – Immanuel Medical Center, Inc." (Immanuel Medical Center). (See filing 30.)[1] For the following reasons, I find that the defendant's motion must be denied.

## I.   BACKGROUND

The second amended complaint alleges as follows. The plaintiff is an inmate who is presently confined in the Douglas County Jail. (See Second Am. Compl., filing 20, ¶ 1.) During his arrest on August 19, 2006, the plaintiff was "struck . . . repeatedly in the head with a maglite upon and after being handcuffed" by officers of the City of Omaha Police Department. (Id. ¶¶ 9-

---

[1] Although the defendant's name is spelled "Immanual" in the caption of the Second Amended Complaint, it is spelled "Immanuel" elsewhere in the complaint and in other filings. (See, e.g., Second Am. Compl., filing 20, ¶ 18; Mot. to Dismiss, filing 30, at 1; Objection to City of Omaha's Motion to Dismiss, filing 36, at 1.) I will use the spelling "Immanuel" in this memorandum and order.

1

11.)  He was then "hogtied" and "carried . . . by his hair to a police vehicle."  (Id. ¶ 14.)  The plaintiff "received numerous head injuries . . . requiring medical treatment from the emergency room at Immanuel Medical Center in Omaha, Nebraska."  (Id. ¶ 17.)  However, after the medical staff at Immanuel Medical Center held a private conversation with the officers, the staff "would not comply with Plaintiff's claims of injuries."  (Id. ¶ 18.)  Instead, "medical staff became hostile and argumentative towards Plaintiff and ignored his claims of a broken nose, cracked skull, and severe nerve damage."  (Id. ¶ 19.)  The plaintiff claims that "Immanuel Medical Center's refusal to examine and properly diagnose Plaintiff's claims prevented him from receiving additional treatment."  (Id. ¶ 23.)  He seems to add, however, that the treatment he did receive conflicted with his religious beliefs.  (Id. ¶¶ 21-22.)

The plaintiff, who is proceeding pro se, filed the second amended complaint "to redress the deprivation of his constitutional rights[,] privileges and immunities secured . . . by provisions of the Eighth and Fourteenth Amendments to the United States Constitution."  (Second Am. Compl., filing 20, ¶ 1.)  The complaint, which is based upon 42 U.S.C. § 1983, "alleges that Defendants were acting under the color of law in their individual and official capacities and were deliberately indifferent to his serious medical needs and improperly withheld medical care."  (Id.)  It also alleges that "Immanu[e]l Medical Center at all material times hereto . . . was employed by the [S]tate of Nebraska and was acting in [its] individual and official capacity and under the color of law."  (Id. ¶ 7.)

## II.  STANDARD OF REVIEW

Defendant Immanuel Medical Center has filed a motion to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (See filing 30.)

### A.  Federal Rule of Civil Procedure 12(b)(6)

"[A] motion to dismiss a complaint [pursuant to Rule 12(b)(6)] should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In resolving such motions, all well-pleaded allegations in the complaint must be taken as true, and the complaint and "all reasonable

inferences arising therefrom" must be construed in favor of the plaintiff. Morton, 793 F.2d at 187.

### B. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. See, e.g., Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

> A court deciding a motion under Rule12(b)(1) must distinguish between a "facial attack" and a "factual attack." In the first instance, the court restricts itself to the face of the pleadings . . . and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint shall not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" In a factual attack, the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards.

Id. (citations omitted). Continuing, the court explained factual attacks in greater detail:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id. at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Immanuel Medical Center's motion to dismiss is restricted to the face of the complaint, and no "matters outside the pleadings" have been submitted for my consideration. Id. at 729 n.6. (See also filings 30-31.) I therefore consider Immanuel Medical Center's motion to be a "facial attack" on the complaint's jurisdictional allegations, and the motion will be analyzed in accordance with the standard of review applicable to Rule 12(b)(6) motions.

### III. ANALYSIS

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Immanuel Medical Center argues that the complaint must be dismissed because the plaintiff cannot satisfy the second of these elements. (See, e.g., filing 31 at 5 ("[I]t is obvious that [Immanuel Medical Center] was not acting under color of state law when it treated Plaintiff.").)[2]

"The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the state?'" Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). "State employment is generally sufficient to render the defendant a state actor," and "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 49-50 (1988) (citations omitted). Conversely, "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). Sometimes, however, "the deed of an ostensibly private organization or individual is to be treated . . . as if a State had caused it to be performed." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). More specifically, a private organization or individual may be deemed a state actor "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may fairly be treated as that of the State itself.'" Id. (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)). The Supreme Court has identified "a host of facts that can bear on the fairness" of attributing seemingly private action to the government:

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a willful participant in joint activity with the State or its agents. We have treated a nominally private entity as a state actor when it is controlled by an

---

[2]The sufficiency of the plaintiff's allegations that Immanuel Medical Center violated a right secured by the Constitution and laws of the United States is not contested.

> "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control."

Id. at 296. It should be noted, however, that "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." Id. at 295-96.

In support of its motion to dismiss the second amended complaint, Immanuel Medical Center argues,

> [Immanuel Medical Center] was making a judgment according to professional standards when it treated Plaintiff. The [S]tate of Nebraska did not control how or in what manner [Immanuel Medical Center] treated Plaintiff . . . . Further, according to the United States Supreme Court's reasoning in Rendell, even if [Immanuel Medical Center] receives state funding and performs a public function in treating persons in custody of the [S]tate (such as plaintiff), neither of which were alleged in Plaintiff's Second Amended Complaint . . . [Immanuel Medical Center] is not acting under color of state law. Thus, because there is no conceivable way in which this Court could conclude [Immanuel Medical Center] was acting under color of state law in treating Plaintiff, Plaintiff's Second Amended Complaint . . . should be dismissed . . . .

(Filing 31 at 5.) I am not persuaded.

Preliminarily, I note that Immanuel Medical Center has failed to submit any evidentiary support for its allegations that it "was making a judgment according to professional standards when it treated Plaintiff" and that the State "did not control how or in what manner [it] treated Plaintiff."[3] These unsubstantiated allegations are not sufficient to support a finding that the plaintiff can prove no set of facts that could establish jurisdiction.

I note too that the plaintiff has alleged that some type of employment relationship existed between the State and Immanuel Medical Center, and that members of the medical staff withheld care from the plaintiff after officers of the Omaha Police Department engaged in a private

---

[3] As I have explained above, Immanuel Medical Center has raised a facial attack against the complaint's jurisdictional allegations.

5

discussion with them. (See Second Am. Compl., filing 20, ¶¶ 7, 18.) When these allegations are taken to be true, and when the plaintiff is given the benefit of all reasonable inferences arising from them, I cannot agree that "there is no conceivable way" that the plaintiff can establish that Immanuel Medical Center acted under color of state law when it engaged in the challenged actions. On the contrary, the plaintiff may be able to prove that the State exercised coercive power over the medical staff at Immanuel Medical Center, that the State provided significant encouragement to the staff, and that the staff acted as a willful participant in joint activity with the State. See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001). See also Witmer v. Bryan Lincoln Gen. Hosp., No. 4:01CV3288, 2003 WL 367726, at *6 (D. Neb. Feb. 20, 2003). The plaintiff may also be able to prove that an employment relationship existed between the Immanuel Medical Center and the State of Nebraska, which could in turn support a finding that the defendant acted under color of state law. Cf. West v. Atkins, 487 U.S. 42 (1988).

Finally, although it is true that the plaintiff has not alleged specifically that Immanuel Medical Center "performs a public function in treating persons in custody of the [S]tate," the absence of such an allegation does not mean that the plaintiff is unable to establish that Immanuel Medical Center's actions were taken under color of state law. As the Court explained in Brentwood Academy, "no one fact can function as a necessary condition across the board for finding state action." 531 U.S. at 295.

Immanuel Medical Center has not demonstrated that it is "beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

**IT IS THEREFORE ORDERED** that Immanuel Medical Center's motion to dismiss, filing 30, is denied.

Dated June 19, 2007.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

6