IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT F. BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV655 |
| | ) | |
| v. | ) | |
| | ) | |
| IMMANUEL MEDICAL CENTER, CITY | ) | MEMORANDUM AND ORDER ON |
| OF OMAHA POLICE DEPARTMENT, T. | ) | DEFENDANTS T.D. GENSLER'S AND |
| D. GENSLER, M.D., and | ) | CORRECTIONAL MEDICAL SERVICES' |
| CORRECTIONAL MEDICAL SERVICES, | ) | MOTION TO DISMISS |
| at the Douglas County Jail, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

     On March 1, 2007, the plaintiff, Robert F. Baker, filed a second amended complaint naming "Immanu[e]l Medical Center, City of Omaha Police Department, T.D. Gensler, M.D. & Correctional Medical Services at the Douglas County Jail" as defendants. (See Second Am. Compl., filing 20.) Now before me is a motion to dismiss the complaint filed by T.D. Gensler, M.D. (Gensler) and Correctional Medical Services (CMS). (See filing 43.) For the following reasons, I find that the defendants' motion must be denied.

## I.   BACKGROUND

     In summary, the second amended complaint alleges as follows. The plaintiff is an inmate presently confined in the Douglas County Jail. (See Second Am. Compl., filing 20, ¶ 1.) During the plaintiff's arrest on August 19, 2006, officers of the Omaha Police Department (OPD) handcuffed the plaintiff and struck him repeatedly in the head with a "maglite," which caused the plaintiff to suffer "numerous head injuries" and aggravated a pre-existing knee injury. (Id. ¶¶ 9-13, 17.) The officers then "hogtied" the plaintiff, "carried [him] by his hair to a police vehicle," and transported him to the emergency room at the Immanuel Medical Center in Omaha, Nebraska, for treatment. (Id. ¶¶ 14, 17-18.) After their arrival at the hospital, the officers held a

1

private conversation with the medical staff.  (Id. ¶ 18.)  Thereafter, the staff became hostile to the plaintiff, "ignored his claims of a broken nose, cracked skull, and severe nerve damage,"[1] and refused to examine and "properly diagnose" him.  (Id. ¶¶ 17-19, 23.)

Sometime later, the plaintiff was transported to the Douglas County Jail.  (See id. ¶ 25.)  Gensler and CMS were employed by the Douglas County Jail to provide medical services to its inmates.  (See id. ¶¶ 5, 26-27; see also filing 43 at 2.)  On September 18, 2006, CMS refused to treat the plaintiff's head injuries, stating to the plaintiff, "You did not have any injuries when you came in."  (Second Am. Compl., filing 20, ¶ 26.)[2]  On September 19, 2006, Gensler denied the plaintiff's request for "a follow-up visit and possible MRI," which had been ordered by the plaintiff's emergency room doctor, stating, "MRI and catskan [sic] are big dollar procedures."  (Id. ¶ 27.)  The plaintiff alleges that CMS and Gensler, along with the other defendants, "were deliberately indifferent to his serious medical needs and improperly withheld medical care."  (Id. ¶ 1.)

The plaintiff has supplemented his second amended complaint with a small set of documents, (see generally Second Am. Compl., filing 20), and a brief summary of the contents of these documents is in order, see Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

The first document attached to the second amended complaint is a "Record of Arrest" that indicates, among other things, that the plaintiff was treated at "Immanuel Hosp" for a laceration to his right eye, a sore back, and "brochospasms."  (Second Am. Compl., filing 20, at "page 9 of 17.")

The plaintiff has also attached a number of "Douglas County Department of Corrections Inmate Requests" to his second amended complaint.  The earliest of these is dated September 16, 2006, and states,

---

[1]The plaintiff alleges that "his whole right side of his face was numb, including the top right row of teeth."  (Second Am. Compl., filing 20, ¶ 19.)

[2]The individual who made this statement is not identified; the plaintiff attributes the statement to "Defendant Correctional Medical Services" generally.  (Second Am. Compl., filing 20, ¶ 26.)

> During my last arrest, I was brought in from the hospital. I sustained numerous head & nose injuries. It has been almost a month now & I think I received injuries that weren't treated. I still have numb spots on my head, certain nerve damage, & blurred & spotted vision.

(Id. at "page 16 of 17.") The "reply" portion of the form states, "Referred to medical provider." (Id.)

A second Inmate Request dated September 19, 2006, states,

> I need a catskan [sic] taken for head injuries. Something is wrong with my head. I'm suffering from spotted & blurred vision.
>
> And in regards to my knee injury, no, I did not follow up on it. I already told you that. Notice of lawsuit forthcoming.

(Id. at "page 12 of 17.") The reply states, "Referred to NSC." (Id.)

An Inmate Request dated September 22, 2006, repeats the plaintiff's request for a CAT scan and his complaints of numbness, blurred and spotted vision, and nerve damage. (Id. at "page 13 of 17.") Again the reply states, "Referred to medical provider." (Id.)

On September 29, 2006, the plaintiff made yet another request for a CAT scan. (See id. at "page 14 of 17.") This request states, "I need this catskan [sic] for legal purposes also. I'm filing a lawsuit against the Omaha Police Department." (See id.) The reply, which is also dated September 29, 2006, states that the plaintiff's request was "Referred to MD." (Id.) On this same date, Gensler completed a "Correctional Medical Services . . . Disciplinary Progress Notes" form. (See id. at "page 11 of 17.") This form, which is addressed to the plaintiff, states, "We do not do diagnostic procedures for 'legal purposes.' It is done if there is a medical requirement. There is no medical requirement–no 'cracked skull' or other . . . need." (Id.)

An Inmate Request dated October 7, 2006, states, "Please see me in regards to my headaches, or at least give me more exedrine to treat them. I am indigent and cannot buy Advil to treat myself." (Id. at "page 15 of 17.") The reply states that the plaintiff's request was "Referred to medical provider." (Id.)

In addition to the foregoing documents, the plaintiff has attached to the second amended complaint a copy of an "Inmate Grievance Form" dated October 16, 2006. (See id. at "page 10 of 17.") In this grievance, the plaintiff complained that he was continuing to suffer from

3

headaches, blurred vision, numbness in his face, and "broken or cracked nose cartlidge [sic]," that he was "treated with mere asprin [sic]," and that his "numerous request forms" for a CAT scan had been denied "because and only because it costs too much." (Id.) The plaintiff wrote, "Something is wrong and I need a catskan to know what's wrong. Either treat me or give me documentation that you won't so I may take next course of action." (Id.) The "Decision of Case Management" portion of the form, which is dated October 27, 2006, states,

> Your records show you were at hospital in April but you did not come to jail until August. There was a note for you to follow up with the doctor after your incarceration in April. Also, there were no comments about any head or facial injuries. We do not feel that a catscan [sic] would be needed unless you have specific symptoms. Thank you.

(Id.)

## II.   STANDARD OF REVIEW

Gensler and CMS have filed a motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (See filing 42.) "[A] motion to dismiss a complaint [pursuant to Rule 12(b)(6)] should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In resolving such motions, all "well-pleaded allegations" in the complaint must be taken as true, and the complaint and "all reasonable inferences arising therefrom" must be construed in favor of the plaintiff. Morton, 793 F.2d at 187. In addition, "written instruments attached to the complaint become part of it for all purposes." Quinn v. Ocwen Federal Bank FSB, 470 F.3d 1240, 1245 (8th Cir. 2006) (citing Fed. R. Civ. P. 10(c)). Therefore, "a court ruling upon a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint." Id. (quoting Abels v. Farmers Commodities Corp., 259 F.3d 910, 914 (8th Cir. 2001)). See also Morton, 793 F.2d at 187.

## III.   ANALYSIS

The defendants argue first that the plaintiff has failed to state a claim that Gensler and

CMS violated the plaintiff's Eighth Amendment rights. (See filing 43 at 5-8.)

> The Eighth Amendment prohibits prison officials' cruel and unusual punishment of inmates, and it has been interpreted as obligating prison officials to provide medical care to inmates in their custody. An inmate's right to medical care is violated if a prison official's conduct amounts to a "deliberate indifference to [the prisoner's] serious medical needs." There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate "(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."

Tlamka v. Serrell, 244 F.3d 628, 632-33 (8th Cir. 2001). The defendants do not contest the sufficiency of the plaintiff's allegations concerning the objective component of his claim. Instead, they argue that the plaintiff cannot establish that the defendants acted with deliberate indifference. (See filing 43 at 7-8.) I disagree.

A plaintiff can establish the subjective component of his claim by showing that "prison officials actually knew of but deliberately disregarded" his serious medical needs, or by showing that the medical treatment that was provided to him "was so inadequate as to rise to the level of deliberate indifference." Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006) (citation omitted). Allegations of "an inadvertent failure to provide adequate medical care" or of negligence "in diagnosing or treating a medical condition" are insufficient "to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Also, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Albertson, 458 F.3d at 765. See also Estelle, 429 U.S. at 107.

The defendants argue that the plaintiff cannot make the requisite showing because the second amended complaint establishes that the plaintiff received adequate treatment for his serious medical needs. Specifically, the defendants argue that the materials attached to the complaint reveal that the plaintiff received "Excedrin" to treat his headaches and that "Dr. Gensler determined that there was no medical need to order a CAT scan." (Filing 43 at 7.) The defendants submit that "[t]o the extent that Plaintiff does not agree with Dr. Gensler's assessment and treatment, he alleges nothing more than a difference of opinion between himself and Dr. Gensler," and that Gensler's failure to order additional treatment was, at most, attributable to mere negligence. (Id.)

5

It is true that an attachment to the complaint indicates that by October 7, 2007, the plaintiff was receiving "exedrine" for his headaches–though the same attachment suggests that the plaintiff was not receiving a sufficient quantity of the drug to "treat" the headaches. (See Second Am. Compl., filing 20, at "page 15 of 17.")  There is no indication, however, that the plaintiff received treatment for his specific complaints of blurred and spotted vision, numbness or "nerve damage," and nose injuries.  Also, although a second attachment to the complaint recites Gensler's conclusion that there was no "cracked skull" or other "medical requirement" that would justify a CAT scan, (see id. at "page 11 of 17"), it is not apparent that Gensler arrived at this conclusion after examining the plaintiff.[3]  Indeed, there is nothing to suggest that Gensler ever examined the plaintiff.

In Estelle v. Gamble, the Supreme Court explained that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and stated, "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice . . . ." Estelle, 429 U.S. at 107.  The court also noted, however, that "Gamble was seen by medical personnel on 17 occasions spanning a 3-month period," and that the doctors diagnosed and treated the injury that formed the basis of his complaint.  See id.  Here, in contrast, there is nothing within the second amended complaint or its attachments indicating that the plaintiff was ever examined or diagnosed by medical personnel.[4]  Hence, the second amended complaint does not establish that the alleged denial of adequate medical treatment was based upon medical judgment.  I am not persuaded that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 106 (citation omitted), and I must therefore reject the defendants' argument that the second amended complaint should be

---

[3]The attachment is entitled "Disciplinary Progress Notes," which does not seem to suggest that it followed from a medical consultation.

[4]Indeed, the response to the plaintiff's grievance could support an inference that jail officials disregarded the "specific symptoms" reported by the plaintiff based upon information taken from records dating to April 2006–which was prior to the alleged assault. (Second Am. Compl., filing 20, at "page 10 of 17.")

6

dismissed for failure to state a claim.

The defendants also argue that the plaintiff's claims must be dismissed to the extent that they stem from an allegation that Gensler denied the plaintiff's request for a follow-up visit with his emergency room doctor. (See filing 43 at 8. See also Second Am. Compl., filing 20, ¶ 27.) The defendants contend that this allegation is based on follow-up instructions that the plaintiff received during an emergency room visit in April 2006 (as opposed to his post-arrest emergency room visit in August 2006), and they argue that "Plaintiff's failure to seek follow-up medical attention between April and his August arrest contradicts any argument that such a follow-up was immediately necessary or that Dr. Gensler's actions in refusing to facilitate a follow-up examination were contrary to Plaintiff's well-being." (Id. at 8-9.) It is not apparent, however, that the plaintiff's allegation is based upon his emergency room visit in April 2006. It is reasonable to infer that the allegation refers to instructions that the plaintiff received from an emergency room doctor in August 2006, and for the purposes of the instant motion, the plaintiff is entitled to the benefit of this inference.

**IT IS THEREFORE ORDERED** that Gensler's and Correctional Medical Services' motion to dismiss, filing 42, is denied.

Dated June 19, 2007.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge