IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT F. BAKER, | ) | 8:06CV655 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| IMMANUEL MEDICAL CENTER, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the court are Defendant Immanuel Medical Center's[1] ("Immanuel") Motion for Summary Judgment (filing no. 82) and Defendants T.D. Gensler ("Gensler") and Correctional Medical Services' ("CMS") Motion for Summary Judgment. (Filing No. 94.) Also pending before the court are numerous miscellaneous motions filed by the parties. As set forth in this memorandum and order, Defendants' Motions for Summary Judgment are granted and all pending motions are denied.

## I.   BACKGROUND

Plaintiff Robert F. Baker ("Baker") filed his Complaint in this matter on October 12, 2006. (Filing No. 1.) Plaintiff was thereafter granted leave to file a Second Amended Complaint,[2] which is the operative complaint in this matter. (*See*

---

[1] Defendant Immanuel Medical Center refers to itself in its filings as "Alegent Health-Immanuel Medical Center, Inc." It is unclear what relationship Immanuel Medical Center has with Alegent Health. However, for ease of reference, the court refers to the entity named here–Immanuel Medical Center.

[2] The term "Second Amended Complaint" is somewhat misleading here. Plaintiff was denied leave to file his Amended Complaint prior to service on

Filing Nos. 20 and 24.) Plaintiff's Second Amended Complaint alleges claims against all Defendants pursuant to 42 U.S.C. §1983. (Filing No. 20 at CM/ECF p. 2.) In particular, Plaintiff alleges that Immanuel acted with deliberate indifference to Plaintiff's serious medical needs. (*Id.* at CM/ECF pp. 1, 4.) Plaintiff further alleges that Gensler and CMS also violated Plaintiff's Eighth Amendment rights and that they acted with deliberate indifference towards Plaintiff's serious medical needs. (*Id.* at CM/ECF pp 5-6.)

Immanuel filed its Motion for Summary Judgment on September 21, 2007. (Filing No. 84.) Along with its Motion, Immanuel filed a filed an Index of Evidence and Brief in Support of Motion for Summary Judgment. (Filing Nos. 85 and 86.) Gensler and CMS filed their Motion for Summary Judgment, Index of Evidence, and Brief in Support of Motion for Summary Judgment on November 8, 2007. (Filing Nos. 94-96.) Baker filed a Brief in Opposition to Immanuel's Motion, but did not submit any evidence. (Filing No. 89.) Likewise, Baker filed a Brief in Opposition to Gensler and CMS' Motion, but did not submit any evidence. (Filing No. 99.)

The Federal Rules of Civil Procedure and the court's local rules require that evidence in support of a motion for summary judgment be "authenticated by affidavit." NECivR 7.1(b)(2)(C); *see also Stuart v. General Motors Corp.*, 217 F.3d 621, 636 n.20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e). Documents which do not meet those requirements cannot be considered.").

---

Defendants. (Filing No. 15.) The (first) Amended Complaint was therefore never filed. For ease of reference, the court refers to Plaintiff's (first) Amended Complaint as his Second Amended Complaint.

Additionally, the party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

The court has carefully reviewed the documents submitted by all of the parties. While Defendants each submitted a statement of material facts in accordance with the court's rules, Baker has not. Further, Defendants submitted evidence which was properly authenticated by affidavit or through Baker's sworn deposition testimony. Although Baker submitted two opposition briefs, he submitted no evidence, even when the record in this matter is construed liberally. In light of this, the court adopts the following undisputed material facts, all of which were set forth by Defendants in their briefs.

## II.   RELEVANT UNDISPUTED FACTS

Background

1. Plaintiff is an inmate at the Douglas County Correctional Center (the "DCCC") in Omaha, Nebraska. (Filing No. 20 at CM/ECF pp. 2-3.)

2. Immanuel is a nonprofit corporation, organized under the laws of the State of Nebraska. (Filing No. 85, Attach. 5, at CM/ECF p. 1.)

3.      Immanuel does not have any type of employment relationship with the State of Nebraska, nor does it have any type of employment relationship with any agent or representative of the State of Nebraska. (*Id.* at CM/ECF p. 2.)

4.      Neither the State of Nebraska nor any agent or representative of the State of Nebraska is entwined in the management or control of Immanuel. (*Id.*)

5.      Immanuel does not have any type of employment relationship with the City of Omaha, nor does it have any type of employment relationship with any agent or representative of the City of Omaha. (*Id.*)

6.      Neither the City of Omaha nor any agent or representative of the City of Omaha is entwined in the management or control of Immanuel. (*Id.*)

7.      Immanuel employs the nurses and x-ray technicians who provide treatment in Immanuel's emergency room. (*Id.* at CM/ECF p. 1.)

8.      Immanuel does not employ, nor have any employment relationship with, any physicians who provide services in Immanuel's emergency room. (*Id.* at CM/ECF pp. 1-2.)

9.      CMS is a private company under contract to provide medical services to inmates at the DCCC. Gensler is and was at all relevant times to this action a physician and independent contractor providing medical care and treatment to inmates at the DCCC on behalf of CMS. (Filing 56 at CM/ECF p. 1.)

4

Plaintiff's August 19, 2006 Emergency Room Visit

10.    On August 19, 2006, Plaintiff was treated at Immanuel. (Filing No. 85, Attach. 2, at CM/ECF p. 1; Attach. 3 at CM/ECF p. 1; Attach. 4 at CM/ECF p. 1; Filing No. 95, Attach. 7.)

11.    Plaintiff was examined and treated by Dr. Holcomb, an independent contractor providing services at Immanuel's emergency room, Lou Ann Neneman, R.N. and Pamela Marr, R.N. (Filing No. 85, Attach. 2, at CM/ECF p. 1; Attach. 3 at CM/ECF p. 1; Attach. 4 at CM/ECF p. 1.)

12.    In determining the proper course of care and treatment for Plaintiff, Dr. Holcomb and Immanuel's staff relied on their professional judgment, training, and skill, and were not influenced by the Omaha Police Department nor any other agent or representative of the State of Nebraska or City of Omaha. (*Id.*, Attach. 2, at CM/ECF pp. 1-2; Attach. 3 at CM/ECF pp. 1-2; Attach. 4 at CM/ECF pp. 1-2.)

13.    In providing treatment to Plaintiff, neither the Omaha Police Department nor any other agent or representative of the State of Nebraska or City of Omaha exercised coercive power or encouraged Dr. Holcomb or Immanuel's staff to employ a certain manner of care and treatment for Baker. (*Id.*, Attach. 2, at CM/ECF p. 2; Attach. 3 at CM/ECF p. 2; Attach. 4 at CM/ECF p. 2.)

14.    Dr. Holcomb and Immanuel's staff did not act as a willful participant in a joint activity with the State of Nebraska or the City of Omaha in their treatment and care of Baker. (Filing No. 85, Attach. 2, at CM/ECF p. 2; Attach. 3 at CM/ECF p. 2; Attach. 4 at CM/ECF p. 2.)

Plaintiff's Medical Treatment at the DCCC

15. After his emergency room visit, Plaintiff was transported to the DCCC. Upon admission, a Jail Medical History and Screening was completed. At that time, Plaintiff did not mention a knee injury. (Filing No. 95, Attach. 1, at CM/ECF p. 2; Attach. 3, at CM/ECF pp. 24-25.)

16. Gensler and other CMS personnel examined Baker on multiple occasions following his August 19, 2006 arrest and found no medical need for an MRI of his knee or a CAT Scan of his head. (Filing No. 95, Attach. 1, at CM/ECF p. 2.)

17. On September 18, 2006, Plaintiff demanded an "immediate operation" of his knee as purportedly indicated by Mercy Hospital in Council Bluffs, Iowa. (*Id.*, Attach. 4, at CM/ECF p. 19.)

18. Gensler reviewed records from Mercy Hospital regarding a knee injury for which Plaintiff was treated in April 2006. The records indicated that Plaintiff injured his knee while fleeing the police. (*Id.*, Attach. 1, at CM/ECF pp. 2-3; Attach. 4, at CM/ECF pp. 29-31.)

19. The diagnosis made at Mercy was a "small avulsion fracture from the lateral tibial plateau." Plaintiff was instructed to follow up when released from jail, at which time an MRI would be performed if indicated. (*Id.*, Attach. 1, at CM/ECF pp. 2-3; Attach. 4, at CM/ECF pp. 29-31.)

20. Gensler fully examined Plaintiff's knee in September 2006. Gensler initially suspected that Plaintiff's knee pain was the result of torn cartilage, but his examination did not support such a finding. In fact, Gensler did not find any defects or abnormal conditions affecting Plaintiff's knee. (*Id.*, Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 34-35.)

21.     Because Gensler's examination did not reveal any defects and because the alleged injury had occurred five months prior to the examination, Gensler determined that "immediate surgery" was unnecessary.  As a result, Gensler prescribed Tylenol for Plaintiff's alleged knee pain.  (*Id.*, Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 7, 34-35.)

22.     With respect to Plaintiff's complaints of a "cracked skull," Gensler examined Plaintiff in September 2006 and determined that the numbness that Plaintiff cited was likely the result of a contused nerve along the supraorbital notch of the eye.  Gensler concluded that Plaintiff would likely recover without medical intervention.  Gensler prescribed Motrin for Plaintiff's headaches.  (*Id.*, Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 7, 34-35.)

23.     Gensler repeatedly prescribed Tylenol to treat Plaintiff's headaches and responded to Plaintiff's requests for a CAT Scan, indicating that no such procedure was warranted by his examination. (*Id.*, Attach. 1, at CM/ECF pp. 3-4; Attach. 3, at CM/ECF pp. 34-35; Attach. 4, at CM/ECF pp. 2-4.)

24.     Plaintiff has never been told by anyone that he needs a CAT Scan, but personally believes that a CAT Scan is warranted due to prior injuries.  Plaintiff agrees that he received treatment for his headaches from Gensler in the way of Ibuprofen and also admits that Gensler's treatment in this regard has helped Plaintiff avoid being "in a mess of trouble right now."   (*Id.*, Attach. 1 at CM/ECF pp. 3-4 Attach. 6, at CM/ECF p. 25.)

25.     The medical care provided to Plaintiff by Gensler and his staff at DCCC was at all times in compliance with generally recognized standards of care, skill and knowledge as used in Omaha, Nebraska or similar localities.  (*Id.*, Attach. 1, at CM/ECF pp. 1-2.)

### III.   ANALYSIS

#### A.   Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

#### B.   Immanuel's Motion for Summary Judgment

Immanuel seeks summary judgment in its favor primarily because it was not acting "under color of state law" in its treatment of Plaintiff. (Filing No. 86.) Plaintiff seeks relief against Immanuel pursuant to 42 U.S.C. § 1983. To obtain relief

under 42 U.S.C. § 1983, the plaintiff must show (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that a person acting under color of state law caused the deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Thus, an allegation that a private entity has deprived the plaintiff of a constitutional right fails to state a cause of action under 42 U.S.C. § 1983. *See, e.g., Pino v. Higgs*, 75 F.3d 1461, 1464-67 (10th Cir. 1996) ("To bring a claim under § 1983, a plaintiff must initially establish that a defendant acted 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to deprive the plaintiff of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States. 42 U.S.C. § 1983.") (citations omitted). Therefore, if the actions of the defendant were "not state action, our inquiry ends." *Rendell-Baker*, 457 U.S. at 838.

However, the acts of a private party may be "fairly attributable" to the state in certain circumstances when the private party acts in concert with state actors. *Id.* at 838 n. 6. Although a private person who is a willful participant in joint action with a state actor may act under color of state law, there must at least be a shared purpose to deprive the plaintiff of a constitutional right, namely, "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451-52 (8th Cir. 1993), cert. denied, 510 U.S. 1111 (1994). *Accord Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997). However, simply performing a service to the public or accepting public funding does not transform an otherwise-private entity into a state actor. *Rendell-Baker*, 457 U.S. at 840-42 ("That a private entity performs a function which serves the public does not make its acts state action.").

The undisputed evidence here shows that Immanuel was not acting under color of state law when it provided treatment to Plaintiff. It is uncontroverted that Immanuel does not have an employment relationship with the State of Nebraska or the City of Omaha. (Filing No. 85, Attach. 5, at CM/ECF pp. 1-2.) It is also uncontroverted that no agents or representatives of the State of Nebraska or the City of Omaha are involved in the management or control of Immanuel. (*Id.*) Further, although Immanuel is subject to state regulation and public funding, and performs public services, this is not enough to transform it into a state actor.

Plaintiff's core argument, again unsupported by evidence, is that Immanuel was influenced by City of Omaha employees (police officers) at the time of treatment. The undisputed evidence shows that no Immanuel employees or other individuals who treated Plaintiff were influenced or coerced by anyone affiliated with the State of Nebraska or the City of Omaha. (*Id.*, Attach. 2, at CM/ECF pp. 1-2; Attach. 3 at CM/ECF pp. 1-2; Attach. 4 at CM/ECF pp. 1-2.) To the contrary, Immanuel employees and other individuals treating Plaintiff relied instead on their professional judgment, training, and skill. (*Id.*, Attach. 2, at CM/ECF pp. 1-2; Attach. 3 at CM/ECF pp. 1-2; Attach. 4 at CM/ECF pp. 1-2.) Because Baker has not shown a shared purpose between the State of Nebraska or City of Omaha and Immanuel, Immanuel cannot be said to be a state actor.

As set forth by the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. Pro. 12(h)(3). Subject matter jurisdiction is proper where a plaintiff asserts a "non-frivolous claim of a right or remedy under a federal statute," commonly referred to as "federal question" jurisdiction. *Northwest South Dakota Prod. Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir. 1986). Because Plaintiff has not shown that Immanuel is a "state actor," Plaintiff has not set forth a claim under a federal statute and has not otherwise established a basis for "federal question" jurisdiction over this matter. Therefore, this

court does not have subject matter jurisdiction over Plaintiff's claims and summary judgment in favor of Immanuel is warranted as to all claims contained in the Second Amended Complaint.

### **C.** **CMS and Gensler's Motion for Summary Judgment**

Defendants CMS and Gensler seek summary judgment in their favor because Plaintiff has failed to submit any evidence of the they were deliberately indifferent to Plaintiff's serious medical needs. (Filing No. 96.) Plaintiff seeks relief against CMS and Gensler for violations of the Eighth and Fourteenth Amendments to the U.S. Constitution.

#### 1. Eighth Amendment Claim

To sustain a claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The plaintiff must allege and show that he suffered objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs. *Hartsfield v. Colburn*, 491 F.3d 394 (8th Cir. 2007). "[S]ociety does not expect that prisoners will have unqualified access to health care. Therefore, 'deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-104). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). Further, the failure to diagnose and treat a medical condition "does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted).

Here, Plaintiff's injuries related to a previous knee injury and to head injuries. The undisputed evidence shows that at the time he entered into DCCC custody, Plaintiff did not mention his knee injury to medical staff. (Filing No. 95, Attach. 1, at CM/ECF p. 2; Attach 3, at CM/ECF pp. 24-25.) Further, Gensler and CMS employees examined Plaintiff's knee several times at the DCCC and found no medical need for an MRI. (*Id.*, Attach. 1, at CM/ECF p. 2.) The only evidence that suggests that Plaintiff *may* need an MRI of his knee is the April 2006 medical records. Such records state that Plaintiff should follow up on his knee injury after getting out of jail, including an MRI *if indicated*. (*Id.*, Attach. 1, at CM/ECF pp. 2-3; Attach. 4, at CM/ECF pp. 29-31.) The evidence is clear that Gensler and CMS repeatedly examined Plaintiff's knee and treated Plaintiff's knee pain. The court therefore finds that Plaintiff has not established that his knee pain was "serious." Further, even if Plaintiff's knee injury was considered "serious," there is no evidence that Gensler or CMS failed to act or acted with deliberate indifference. Plaintiff's complaints regarding the treatment he received for his knee injury amount to "disagreement with a medical judgment," which is not enough to sustain an Eighth Amendment claim. *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993).

The same is true of Plaintiff's head injuries. Based on nothing more than his own lay opinion, Plaintiff alleges that he has numbness, a "cracked skull," potential "bleeding on the brain," and other conditions relating to his head. Gensler and CMS personnel have repeatedly examined Plaintiff, diagnosed his headaches and numbness as relating to a nerve near his eye. (*Id.*, Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 7, 34-35.) Gensler and CMS personnel have treated Plaintiff's headaches and determined that a CAT Scan is unnecessary. (*Id.*, Attach. 1, at CM/ECF pp 3-4; Attach. 3, at CM/ECF pp. 34-35; Attach. 4, at CM/ECF pp. 2, 4.) Plaintiff has submitted no evidence contradicting these facts. As with his knee injuries, Plaintiff's complaints with respect to his headaches, numbness, and related issues are not "serious." Even if such medical needs are considered "serious," there is no evidence that Gensler or CMS failed to act or acted with deliberate indifference towards Plaintiff's medical needs. The court therefore grants summary judgment in favor of Gensler and CMS as to all of Plaintiff's claims.

### 2.     Fourteenth Amendment Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. *Singleton v. Cecil*, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir. 1999) (*en banc*). Further, substantive due process protects prisoners from conduct which "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citations omitted). Substantive due process rights are implicated when a state actor "engages in conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity." *Id.* (citations and quotations omitted).

Here, Plaintiff has not alleged any violations of procedural due process rights. Therefore, his claims must relate to substantive due process. Again, however, Plaintiff has failed to submit any admissible or authenticated evidence that he had a protected liberty interest or that the conduct of CMS or Gensler was "outrageous' or "offensive to human dignity." *Id.* To the contrary, the evidence before the court is that CMS and Gensler provided substantial "medically indicated" treatment to Plaintiff. Summary judgment must also be granted in favor of CMS and Gensler on Plaintiff's Fourteenth Amendment claim.

## IV. PENDING MOTIONS

### A. Motion to Amend

Plaintiff filed a Motion for Leave to File an Amended Complaint. (Filing No. 110.) Plaintiff's proposed amended complaint seeks to both add additional defendants and add claims against the current Defendants (*Id.* at CM/ECF pp. 4-19.) Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." The applicable standard is summarized in *Foman v. Davis*, 371 U.S. 178, 182 (1962), which states:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent reason-such as undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Id.*

However, the Eighth Circuit has held that it is not an abuse of discretion to deny a motion to amend when late tendered amendments involve new theories of

recovery and impose additional discovery requirements. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 448 (8th Cir. 1995); *see also Barrett v. Independent Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (affirming denial of leave to amend, although bad faith and dilatory motive were not found, where "amendment sought to add several ... additional counts" and "[e]ven though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters ... which could not have been raised initially"). Accordingly, "[a]t some point. . . time delay on the part of a plaintiff can be procedurally fatal. In that situation, the plaintiff must meet the burden of showing that the delay 'was due to oversight, inadvertence, or excusable neglect[.]'" *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (citing *Frank Adam Electric Co. v. Westinghouse Electric & Mfg. Co.*, 146 F.2d 165, 167 (8th Cir. 1945)).

Plaintiff filed his Motion for Leave to File an Amended Complaint on December 19, 2007, over a year after he filed his original Complaint in this matter and nine months after he filed his Second Amended Complaint. The incidents which are the subject of Plaintiff's proposed amended complaint were known to Plaintiff during the pendency of this case. However, Plaintiff did not raise these issues until after Defendants filed a Motion for Summary Judgment. Furthermore, prior to the filing of his Motion for Leave to File an Amended Complaint, Plaintiff actively moved his case forward by proceeding with discovery and filing numerous motions.

The deadline for conducting discovery in this case expired on October 8, 2007. The deadline for filing dispositive motions expired on November 8, 2007. Therefore, because this case has progressed past the stage of discovery, and Plaintiff's late tendered amendment involves new theories of recovery that would involve additional discovery, the court denies Plaintiff's Motion for Leave to File an Amended Complaint.

### B. Discovery-Related Motions

Also pending before the court are numerous other motions, some of which have been withdrawn by Plaintiff, but all of which deal with discovery and case progression issues. The court has carefully reviewed the record and finds that Defendants have complied with Plaintiff's discovery requests fully and in good faith.[3] Plaintiff's motions (filing nos. 98, 105, 114, 115, and 117) are therefore denied. Immanuel's related Motion to Strike (filing no. 103) is likewise denied.

### C. Motion to Treat Injuries

Plaintiff also filed a Motion for Order to Treat Plaintiff's Injuries. (Filing No. 90.) Summarized, Plaintiff seeks an order from this court requiring the Defendants to provide treatment for Plaintiff from entities other than Defendants. (*Id.* at CM/ECF p. 2.) While this court may have the discretion to enter such an order, on the record before the court, outside medical treatment is not warranted. *See Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997) (holding that district court did not abuse its discretion in denying motion for medical treatment when prisoner's "primary purpose was to obtain medical care and to complain of deliberate indifference to his serious medical needs" and "the demonstration of disputes and controversies over his medical condition" was "secondary"); *Kendrick v. Frank*, No. 05-C-0976, 2007 WL 2207907, at *1-2 (E.D. Wis. July 20, 2007) (same).

---

[3] The court notes that chief among Plaintiff's discovery-related complaints is that the nurse who treated him at Immanuel, Pamela Marr, has not replied to his written deposition questions. However, the record clearly shows that Ms. Marr is critically ill and hospitalized and therefore cannot respond to Plaintiff's propounded discovery. (Filing No. 102, Attach. 3.)

IT IS THEREFORE ORDERED that:

1. Defendant Immanuel Medical Center's Motion for Summary Judgment (filing no. 84) is granted. Defendant T.D. Gensler and Correctional Medical Services' Motion for Summary Judgment (filing no. 94) is granted. All claims contained in Plaintiff's Second Amended Complaint (filing no. 20) against these three Defendants are dismissed with prejudice.

2. A separate judgment will be entered in accordance with this memorandum and order.

3. Plaintiff's pending motions (filing nos. 90, 98, 105, 110, 114, 115 and 117) are denied in accordance with this memorandum and order.

4. Immanuel's Motion to Strike (filing no. 103) is denied.

5. The Clerk of the court is directed to send a copy of this memorandum and order and the judgment to Plaintiff at his last known address.

Dated February 4, 2008.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge